UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POWERHOUSE MARKS LLC,[1]

    Plaintiff,

v.                                                  Case No. 04-73923
                                                     Honorable Patrick J. Duggan

CHI HSIN IMPEX, INC., COSTCO
WHOLESALE CORP., DICK'S SPORTING
GOODS, INC., DUNHAM'S ATHLEISURE CORP.,
MEIJER, INC., and WAL-MART STORES, INC.,

    Defendants.
_____/

**<u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION THAT
PLAINTIFF IS NOT ENTITLED TO THE MONETARY RECOVERY IT SEEKS</u>**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 2, 2006.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

On October 6, 2004, plaintiff Powerhouse Marks LLC ("Powerhouse") filed this action against defendant Chi Hsin Impex Inc. ("Impex"), alleging that Impex's sale of certain fitness equipment infringes Powerhouse's trademarks thereby violating federal and state law. Specifically, Powerhouse alleges the following claims: infringement in

---

[1] Powerhouse Licensing LLC, initially named as a plaintiff in this action, was dismissed on September 7, 2005.

violation of Michigan common law and the federal Lanham Act, 15 U.S.C. § 1114(a); unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); and a violation of the Michigan Consumer Protection Act, MICH. COMP. LAWS ANN. § 445.903. Plaintiff filed an amended complaint on April 5, 2005, adding as defendants the following retailers that sell fitness equipment manufactured by Impex: Costco Wholesale Corporation ("Costco"), Dick's Sporting Goods Inc. ("Dick's), Dunham's Athleisure Corporation ("Dunham's"), Meijer Inc. ("Meijer"), and Wal-Mart Stores Inc. ("Wal-Mart")(collectively "retail defendants").

Presently before the Court is defendants' "Motion for Adjudication that [Powerhouse] is Not Entitled to the Monetary Recovery it Seeks." Specifically, defendants argue that Powerhouse is not entitled to an award of damages against any defendant because there is no evidence that Powerhouse suffered any actual damages as a result of defendants' alleged infringing conduct. Defendants further argue that Powerhouse is barred from recovering "marketplace damages"– i.e. lost sales, lost profits, or loss of goodwill– because it lacks any evidence of actual confusion. Finally, defendants contend that Powerhouse is not entitled to disgorgement of the retail defendants' profits because it is not able to show that those defendants intentionally infringed the "Powerhouse" marks.

Section 1117(a) of the Lanham Act establishes the following damages for trademark infringement actions:

> When a violation of any right of the registrant of a mark

> registered in the patent and Trademark Office, a violation under section 1125(a) or (d) of the title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction.  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.  In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.  The court in exceptional circumstances may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).  The word "willful" with respect to violations of Section 1125(c) was added when Congress amended the statute in 1999.  It appears from Powerhouse's response to defendants' pending motion that, in addition to an injunction and the costs of this action, it is seeking to recover defendants' profits, lost royalty revenue, damages for loss of goodwill, and damage control costs.

    Damages in Lanham Act trademark infringement actions are governed by the law of damages of tort actions.  *Jeffrey Chain, L.P. v. Tropodyne Corp.*, No. 99-6268, 2000 WL 1888719, at *4 (6th Cir. Dec. 20, 2000)(unpublished op.)(citing *Broan Mfg. Co. v. Ass'd Distributors, Inc.*, 923 F.2d 1232, 1235 (6th Cir. 1991)).  "Under general tort

principles 'the infringer-tortfeasor is liable for all injuries caused to [the] plaintiff by the wrongful act, whether or not actually anticipated or contemplated by the defendant when it performed the acts of infringement.'" *Id*. "To be entitled to damages, the plaintiff must prove that "some damages were the certain result of the wrong . . . Damages are precluded where the damage claimed is not the certain result of the wrong." *Id*. (quoted references omitted). This is distinct from a situation where the *amount* of damages is uncertain. *Id*. (citing *Grantham and Mann, Inc. v. Am. Safety Prods.*, 831 F.2d 596, 602 (6th Cir. 1987)(providing that "[o]nce the existence of damages has been shown, all that an award of damages requires is substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages.")

 Although proof of injury resulting from the defendant's conduct is necessary, the Sixth Circuit has clearly held that actual confusion is not required before a monetary award is justified. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 606 (6th Cir. 1991). The cases cited by defendants to assert that actual confusion is required are false advertising cases, where the courts held that some evidence of actual confusion is necessary where the advertising is not literally false. *See Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683 (6th Cir. 2000); *Frisch's Rest., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982). As the court explained in *Balance Dynamics*:

> Like many other circuits, we have held that where plaintiffs

> seek to recover monetary damages for false or misleading advertising that is not literally false, "a violation can only be established by proof of actual deception (i.e., evidence that individual consumers perceived the advertisement in a way that misled them about the plaintiff's product.)"

204 F.3d at 690 (quoting *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999)).  As this is not a false advertising case, the Court will adhere to the Sixth Circuit's holding in *Wynn Oil* and hold that Powerhouse's lack of evidence of actual confusion does not bar a monetary award.

Nevertheless, except possibly loss of royalty revenue, Powerhouse has not set forth evidence to suggest that it suffered any damages as a result of the alleged infringement. To the extent Powerhouse is alleging that it has suffered lost profits, the Court finds it unlikely that Powerhouse suffered any lost sales or business resulting from defendants' alleged conduct because Powerhouse does not sell fitness equipment for home use. Additionally, it is purely speculative– and most unlikely– that a consumer of Powerhouse's products (gyms and the nutritional products sold through Powerhouse's gyms) decided not to join or use Powerhouse's products as a result of defendants' use of the "Powerhouse" mark on fitness equipment sold for home use.  Powerhouse presents no evidence to suggest otherwise.

With respect to loss of goodwill, Powerhouse has presented evidence suggesting that at least some of Impex's products are poorly made.  For example, Powerhouse presents a letter that Dick's sent to Impex indicating Dick's belief that one of Impex's

products was unsafe.  Powerhouse, however, has failed to present any evidence to suggest that the alleged inferior quality of Impex's products has damaged Powerhouse's reputation.  There is no evidence suggesting that consumers have associated those products with Powerhouse or its mark.

There is no evidence that Powerhouse has expended any funds to control any damage caused by the alleged violation.  As there also is no evidence of any damage thus far requiring damage control costs, the Court believes it would be purely speculative to find that Powerhouse will need to expend funds in the future.

Defendants fail to convince the Court that Powerhouse is not entitled to damages for lost royalty revenue.  If such damages are awarded, however, the Court believes that they only should be awarded against Impex.  Impex, not the retail defendants, would have been the entity to obtain a license to manufacture and use the "Powerhouse" mark.

With respect to lost profits, prior to the 1999 amendment of Section 1117, the Sixth Circuit and other Circuits held that disgorgement of profits is not a proper remedy absent evidence of wilful infringement– i.e. bad faith– by the defendant.  *See, e.g., Frisch's Restaurants, Inc.*, 849 F.2d 1012, 1015 (6th Cir. 1988)(citing *Nalpac, Ltd. v. Coring Glass Works*, 784 F.2d 752, 755 (6th Cir. 1986));  *SecuraComm Consulting, Inc. v. Securacom Inc.*, 166 F.3d 182, 190 (3d Cir. 1999); *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1223 (10th Cir. 1998).[2]  Following the 1999 amendments, at which time

---

[2]The Eighth, Second, and D.C. Circuits also embraced a willfulness requirement in order to obtain an award of profits.  *See Minnesota Pet Breeders, Inc. v. Schell &*

6

Congress added the word "wilful" with regard to a violation of Section 1125(c) but not Sections 1125(a) and (b), the courts that have addressed the issue have held that bad faith is not a prerequisite to an award of damages based on the defendant's profits. *Quick Tech., Inc. v. Sage Group PLC*, 313 F.3d 338, 348 (5th Cir. 2003); *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 173-75 (3d Cir. 2005)(finding court's previous decision in *SecuraComm Consulting* superceded by 1999 amendments); *Nike, Inc. v. Top Brand Co. Ltd.*, — F. Supp. 2d —, 2005 WL 1654859, at *9 (S.D.N.Y. July 13, 2005). As those courts have reasoned, the plain language of the amendment indicates that Congress intended to condition monetary awards for Section 1125(c) violations, but not violations of Sections 1125(a) or (b). *Banjo Buddies*, 399 F.3d at 174. As the Third Circuit explained:

> We presume Congress was aware that most courts had consistently required a showing of willfulness prior to disgorgement of an infringer's profits in Lanham Act cases, despite the absence of the word "willful" in the statutory text prior to 1999 . . . By adding this word to the statute in 1999, but limiting it to [Section 1125(c)] violations, Congress effectively superseded the willfulness requirement as applied to [Section 1125(a)].

*Id.* (citations omitted).

---

*Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir. 1994); *The George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1534 (2d Cir. 1992); *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 968 (D.C. Cir. 1990). In comparison, the Seventh, Ninth, and Eleventh Circuits held that there is no express requirement that the infringer wilfully infringed the plaintiff's marks to justify an award of profits. *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 991 (9th Cir. 1995); *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989); *Burger King Corp. v. Mason*, 855 F.2d 779, 783 (11th Cir. 1988).

The Sixth Circuit has not re-visited the issue of whether bad faith is a prerequisite to a disgorgement of the defendant's profits since the 1999 amendments. This Court believes, however, that the Sixth Circuit would follow the Fifth and Third Circuits and find that the judicially imposed requirement has been superseded by statute. As Powerhouse's claims are not brought pursuant Section 1125(c), but rather Sections 1114 and 1125(a), the Court finds that Powerhouse is not precluded from an accounting merely because there is no evidence that the retail defendants acted in bad faith.

Willfulness, however, is an important factor in assessing whether a plaintiff is entitled to a disgorgement of profits. Section 1117(a) continues to provide that any damage award "is subject to the principles of equity." Willfulness is one of several factors courts consider in determining whether an award is equitable. With respect to a disgorgement of the defendant's profits, courts also consider "if the defendant is unjustly enriched, if the plaintiff sustained damages, or if an accounting is necessary to deter infringement." *See Banjo Buddies*, 399 F.3d at 178.

The Fifth Circuit has adopted a multi-factor test to determine whether an award of profits is appropriate in a trademark infringement case. *Quick Tech, Inc.*, 313 F.3d at 348-39 (quoting *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998)). The non-exhaustive factors to be considered are as follows:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonably delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a

8

      case of palming off.

*Id.* Applying these factors to the case at hand, the Court finds that an award of profits would not be equitable with respect to the retail defendants. The Court has found no evidence of willful infringement. As Powerhouse does not sell fitness equipment, no sales have been diverted from Powerhouse as a result of defendants' conduct. Additionally, there is evidence that Powerhouse unreasonably delayed asserting its rights against Dunham's, Dick's, and Impex. The Court believes that if Powerhouse had not delayed asserting its rights against Impex, the remaining retail defendants most likely would not have sold Powerhouse products for as long as they did. Finally, this is not a case where the retail defendants palmed off the plaintiff's products as their own. Moreover as the Sixth Circuit has emphasized, in addition to making an award of damages "subject to the principles of equity," Section 1117(a) ". . . also states that the award is to 'constitute compensation and not a penalty.'" *Balance Dynamics Corp.*, 204 F.3d at 695 (quoting 15 U.S.C. § 1117(a)).

      The Court has found a genuine issue of material fact with regard to whether Impex acted in bad faith. Powerhouse also presents evidence that Impex has engaged in similar conduct with respect to other trademark owners. Thus the Court believes that it cannot determine at this stage in the litigation whether an award of profits is appropriate in this case with respect to Impex.

      Accordingly,

      **IT IS ORDERED**, that defendants' "Motion for Summary Adjudication that

Plaintiff is Not Entitled to the Monetary Recovery It Seeks" is **GRANTED as to Costco, Dick's, Dunham's, Meijer, and Wal-Mart**;

**IT IS FURTHER ORDERED**, that defendants' motion is **GRANTED as to Impex with respect to** Powerhouse's request for damages based on lost profits, loss of goodwill, and damage control costs and is **DENIED as to Impex with respect to** Powerhouse's request for lost royalty revenue and a disgorgement of Impex's profits.

                                         s/PATRICK J. DUGGAN
                                         UNITED STATES DISTRICT JUDGE

Copies to:
George T. Schooff, Esq.
Edward R. Schwartz, Esq.
Kathleen Lang, Esq.
Howard W. Burdett, Jr., Esq.