UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POWERHOUSE MARKS LLC,

    Plaintiff,

v.                                                Case No. 04-73923
                                                Honorable Patrick J. Duggan

CHI HSIN IMPEX, INC., COSTCO
WHOLESALE CORP., DICK'S SPORTING
GOODS, INC., DUNHAM'S ATHLEISURE CORP.,
MEIJER, INC., and WAL-MART STORES, INC.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT CHI HSIN IMPEX, INC.'S MOTION *IN LIMINE* TO EXCLUDE THE BERGER SURVEY**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on April 5, 2006.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

On October 6, 2004, plaintiff Powerhouse Marks LLC ("Powerhouse") filed this action against defendant Chi Hsin Impex Inc. ("Impex"), alleging that Impex's sale of certain fitness equipment infringes Powerhouse's trademarks thereby violating federal and state law. Specifically, Powerhouse alleges that Impex's use of its marks constitutes infringement in violation of Michigan common law and the federal Lanham Act (15 U.S.C. § 1114), unfair competition in violation of the Lanham Act (15 U.S.C. § 1125), and a violation of the Michigan Consumer Protection Act (MICH. COMP. LAWS ANN. §

1

445.903).  Plaintiff filed an amended complaint on April 5, 2005, adding as defendants various retailers that sell fitness equipment manufactured by Impex.  Presently before the Court is Impex's motion *in limine* to exclude a survey conducted for Powerhouse by James T. Berger (the "Berger survey").

In its motion, Impex contends that the Berger Survey was not conducted in accordance with accepted principles of survey research and, as a result, fails to meet the requirements of Federal Rule of Evidence 702.  Specifically, Impex argues that the survey included the wrong universe of the population to be surveyed and therefore is irrelevant to the issues in this lawsuit.  Rather than testing potential buyers of Impex's products, the survey tested users of Powerhouse's services.

**Factual Background**

Powerhouse is the owner of the POWERHOUSE GYM, POWERHOUSE GYM plus design, and POWERHOUSE marks.  Those marks are used in connection with Powerhouse's fitness centers throughout the United States and abroad.  In addition to using Powerhouse's marks in the name of fitness centers, Powerhouse and its licensees use the marks for bodybuilding services, on athletic training attire, publications regarding fitness, multivitamin supplements, and other nutritional products.  These items are not sold through retailers, but rather at Powerhouse fitness centers.  Neither Powerhouse nor its licensees sell fitness equipment with the POWERHOUSE marks.

Impex is a California corporation that manufactures fitness products.  In late 1995, Impex decided to expand its product line to include fitness equipment that would be

distributed nationwide through retail chain stores. In November 1995, Impex began manufacturing a line of fitness equipment under the name "Powerhouse." Impex subsequently entered into agreements with numerous retailers (e.g. Costco Wholesale Corporation, Dunham's Athleisure Corporation, Meijer, Inc., Dick's Sporting Goods, Inc., and Wal-Mart Stores, Inc.) for nationwide distribution of its "Powerhouse" fitness equipment in the retailers' stores.

Powerhouse contends that Impex's use of the POWERHOUSE name creates a likelihood of confusion among consumers– a necessary element to prove Powerhouse's state and federal infringement claims. In order to establish a likelihood of confusion, Powerhouse retained Berger "to create and conduct a survey to determine if a typical person who goes to a physical fitness center believes that [Impex's] branded exercise product . . . is sponsored by, licensed by or associated with [Powerhouse]." *See* Mot. Ex. A at 3-4.

Berger conducted his survey at three shopping malls within a twelve mile radius of three or more Powerhouse fitness centers: Oakland Mall in Troy, Michigan; Broadway Mall in Hicksville, New York; and Regency Mall in Jacksonville, Florida. *See id.* at 5. Fifty interviews were conducted at each site. *See id.* Berger's surveyors only interviewed individuals, age eighteen years or older, who had worked out in a fitness center, club, or gym in the preceding five years. *See id.* at 4. The individuals interviewed were brought into a room in which five branded pieces of workout equipment were on display. *See id.* After the individuals examined the equipment, they were asked, "Which, if any,

equipment brand that you see in this room do you believe is sponsored by, licensed by or associated with a particular fitness center, fitness club or fitness chain?" *See id*. at 6. If the participant identified a particular piece of equipment, the surveyor then asked: "What is the fitness center, fitness club or fitness chain?" *See id*.

As a result of his survey, Berger concluded that "[t]here is both actual confusion and likelihood of confusion between defendant's [Impex's] Powerhouse equipment and plaintiff['s] Powerhouse fitness centers in locations where there are three or more Powerhouse fitness centers within a twelve mile radius." *See id*. 9. Berger further concluded that brand recognition of Powerhouse's gyms exceeds the actual share of the market that Powerhouse enjoys in the market areas where the survey was performed. *See id*. Finally, Berger concludes that "[t]he percentage of people believing that [Impex's] Powerhouse fitness equipment was licensed by, sponsored by or associated with the plaintiff[] exceeds the percentage of people who have worked out at Powerhouse fitness centers within the last two years." *See id*.

## Applicable Law and Analysis

"Valid consumer surveys can be significant evidence of actual confusion." *Sports Auth., Inc. v. Abercrombie & Fitch, Inc.*, 965 F. Supp. 925, 933 (E.D. Mich. 1997)(citing *Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 775 (8th Cir. 1994)); *see also Simon Property Group L.P. v. mySimon, Inc.*, 104 Supp. 2d 1033, 1038 (S.D. Ind. 2000)(recognizing that "[c]onsumer surveys are generally accepted by courts as one means of showing the likelihood of consumer confusion."). To be admissible, however,

the survey must have been conducted in accordance with accepted principles of survey research. *Sports Auth., Inc.*, 965 F. Supp. at 933 (citing *Nat'l Football League Properties v. New Jersey Giants*, 637 F. Supp. 507, 513 (D.N.J. 1986)).

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. To assess whether a survey is the product of reliable principles and methods, the Federal Judicial Center's *Manual for Complex Litigation* advises courts to take into account such relevant factors as whether:

> • the population was properly chosen and defined;
> • the sample chosen was representative of that population;
> • the data gathered were accurately reported;
> • the data were analyzed in accordance with accepted statistical principles;
> • whether the questions asked were clear and not leading;
> • whether the survey was conducted by qualified persons following proper interview procedures; and
> • whether the process was conducted so as to ensure objectivity (e.g., determine if the survey was conducted in anticipation of litigation and by persons connected with the parties or counsel or by persons aware of its purpose in the litigation).

MANUAL FOR COMPLEX LITIGATION (FOURTH), § 11.493 (2004); *see also Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 765 (E.D. Mich. 2003)(utilizing

some of these factors to evaluate reliability of survey); *Sports Auth.*, 965 F. Supp. at 933 (same).  A survey should be excluded if, after evaluating these factors, the court finds the survey irrelevant or finds that its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  FED. R. EVID. 402 & 403.

As this Court has stated before, *see* 1/4/06 Op., in a case where the plaintiff alleges that the defendant's use of the plaintiff's marks causes customers to mistakenly think that the defendant's goods or services are from the same source as or are connected with the plaintiff's goods or services, "the proper universe to survey is the potential buyers of the *junior user's* [i.e. defendant's] goods or services."  5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 32:159 (4th Ed. 2003)(emphasis in original).  As stated, the proper universe is not limited to *actual* buyers, but rather *potential* buyers.  Thus the Sixth Circuit has noted that the proper universe consists of "members of the public" or "nonpurchasing, casual observers."  *Esercizio v. Roberts*, 944 F.2d 1235, 1245 (6th Cir. 1991)(explaining that "[t]he survey evidence in this case showed that members of the public, but not necessarily purchasers, were actually confused by the similarity of the products."); *Champions Golf Club, Inc. v. Champions Golf Club*, 78 F.3d 1111, 1119 (6th Cir. 1996)(stating that "[t]here is no requirement that evidence of actual confusion, to be relevant, 'must be confusion at the point of sale– purchaser confusion– and not the confusion of nonpurchasing, casual observers.'")

Berger's survey focuses on too narrow of a population to provide reliable evidence as to whether members of the public or nonpurchasing, casual observers are confused as a

result of Impex's use of the POWERHOUSE mark.  By choosing to conduct his survey only at locations within a twelve mile radius of three or more Powerhouse fitness centers and selecting only interviewees who had worked out at a fitness center, club, or gym within the last five years, Berger surveyed a population more likely to be familiar with Powerhouse's marks than the general population.  The universe surveyed clearly was more likely to associate Impex's products with Powerhouse than the larger universe of potential buyers of Impex's products, or even a universe consisting of individuals who worked out at a fitness center but in an area with a smaller concentration of Powerhouse gyms.

      The Court acknowledges that confusion of the population Berger surveyed may be relevant to dilution.  As the Sixth Circuit has stated: "The Lanham Act . . . was intended to do more than protect consumers at the point of sale." *Escercizio*, 944 F.2d at 1244.  It also "protect[s] against the cheapening and dilution of the genuine product, and to protect the manufacturer's reputation." *Id*.  Thus if Berger's conclusions were limited to actual confusion or likelihood of confusion of the population he surveyed, his survey possibly would be relevant to dilution.  Berger, however, has drawn conclusions regarding a population beyond that surveyed.  In other words, Berger does not conclude that individuals who have worked out at a fitness center within the last five years and who are interviewed at a location within a twelve mile radius of at least three Powerhouse gyms are actually confused and likely to be confused between Impex's Powerhouse equipment and Powerhouse's gyms.  Instead, Berger reaches a broader conclusion in his report– i.e.

that "there is confusion between the defendant's Powerhouse fitness equipment and the plaintiff['s] Powerhouse fitness centers." *See* Mot. Ex. A at 8.

Additionally, the Court does not believe that the survey even was designed to measure whether, in the view of the universe surveyed, the reputation of Powerhouse's fitness centers is tarnished by Impex's use of the POWERHOUSE mark. Moreover, the Court believes the jury likely would be confused as to the survey's relevance and improperly rely on Berger's conclusions as evidence of actual or likelihood of confusion to demonstrate infringement.

In any event, other defects in Berger's survey lead this Court to conclude that the survey results are too unreliable to be admissible. First, Berger only surveyed one hundred and fifty respondents. The Sixth Circuit has questioned the statistical significance of a survey of so few respondents. *See Autozone, Inc. v. Tandy Corp.,* 373 F.3d 786, 789 (6th Cir. 2004). Second, "[a] survey also is not reliable if it suggests to the respondents an answer that would not otherwise have occurred to them." *Wells Fargo*, 293 F. Supp. 2d at 768. Berger's surveyors asked respondents: "Which, if any, equipment brand that you see in this room do you believe is sponsored by, licensed by or associated with a particular fitness center, fitness club or fitness center chain?" This question clearly led respondents to find, not only a connection or association between the fitness equipment shown and some other product or service, but specifically a fitness center, club, or chain. *See, e.g., Wuv's Int'l Inc. v. Love's Entm't, Inc.*, 208 U.S.P.Q. 736, 755-56 (D. Colo. 1980)(finding survey question "Do you believe that this restaurant is

connected with or related to any other restaurants?" leading and unnecessarily suggestive because it deliberately planted in the respondents' minds that the defendant's restaurant might be connected with or related to another entity, specifically another restaurant). Third, Berger conducted his survey in anticipation of this litigation and at the direction of Powerhouse and its counsel.

For the above reasons, the Court finds that any probative value of Berger's survey is substantially outweighed by the prejudice and confusion it will cause at trial. Accordingly,

**IT IS ORDERED**, that Impex's motion *in limine* to exclude the Berger survey is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
George T. Schooff, Esq.
Edward R. Schwartz, Esq.
Kathleen Lang, Esq.
Howard W. Burdett, Jr., Esq.