UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POWERHOUSE MARKS LLC,

       Plaintiff,

v.                                          Case No. 04-73923
                                          Honorable Patrick J. Duggan

CHI HSIN IMPEX, INC., COSTCO
WHOLESALE CORP., DICK'S SPORTING
GOODS, INC., DUNHAM'S ATHLEISURE CORP.,
MEIJER, INC., and WAL-MART STORES, INC.,

       Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR JUDGMENT AND GRANTING PLAINTIFF'S
MOTION FOR AN AWARD OF ATTORNEY FEES**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 4, 2006.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

       Plaintiff Powerhouse Marks L.L.C. ("Powerhouse") filed this action alleging that defendants infringed its "POWERHOUSE" trademark. The matter proceeded to trial against all defendants, except defendant Wal-Mart Store, Inc. ("Wal-Mart"), on May 1, 2006.[1] On May 11, 2006, the jury returned a verdict in favor of Powerhouse. Presently

---

      [1]Powerhouse and Wal-Mart reached a settlement prior to trial. On April 27, 2006, the Court signed a Stipulated Order entering a permanent injunction against Wal-Mart and dismissing Wal-Mart from this action. *See* Docket No. 242. The Stipulated Order

1

before the Court is Powerhouse's motion for judgment, filed June 27, 2006, in which it seeks the following: (1) judgment against defendants for violating the Lanham Act and the Michigan Consumer Protection Act; (2) damages in the form of a trebled reasonable royalty; (3) an award of the profits of defendant Chi Hsin Impex ("Impex"); (4) Powerhouse's costs to pursue this action; (5) prejudgment interest; and (6) a permanent injunction.  Also pending is Powerhouse's motion for an award of attorney fees, filed June 28, 2006.

## The Jury's Verdict

This Court instructed the jury on the remedies it could award Powerhouse if it found defendants liable for trademark infringement, unfair competition, or for violating the Michigan Consumer Protection Act.  Those remedies included all profits earned by Impex as a result of its infringement and Powerhouse's actual damages due to the infringement, such as lost royalty revenue.  *See* 5/11/06 Trial Tr. at 100-02.  The Court also instructed the jury that the final question on the Verdict Form asked it ". . . to determine what amount you believe Powerhouse is entitled to recover."  *See id.* at 107.  Following the Court's instructions, the jury began its deliberations and returned a verdict later the same day.  *See id.* at 107 & 111.

---

further provides, *inter alia*, that Powerhouse and Wal-Mart are to bear their own costs and attorney fees. *See id*. ¶ 10.  Based on Powerhouse's and Wal-Mart's settlement and the Stipulated Order, the Court assumes that Powerhouse is not now seeking additional remedies from Wal-Mart.  The Court's current Opinion and Order, therefore, do not apply to Wal-Mart.

Before the jury's verdict was announced, however, the Court sent the jury back to the jury room in order to confirm with the parties' attorneys the meaning of the last question on the Verdict Form. *See id*. at 111-14. Specifically, the Court wanted to determine whether the parties intended the jury's answer to the last question on the Verdict Form to indicate the total amount the jury believed Powerhouse should be entitled to recover, regardless of its answers to preceding questions. *See id*. Counsel for both parties indicated to the Court that the jury's answer to the last question, regardless of any amounts set forth in earlier questions, should be the total amount Powerhouse is entitled to recover. *See id*.

As indicated on the Verdict Form, the jury concluded that Powerhouse had proven that Impex's sale of "Powerhouse" brand fitness equipment created a likelihood of confusion. *See* Docket No. 250. The jury further concluded that Powerhouse "has . . . proven by a preponderance of the evidence that, at the time of Impex's initial use of 'Powerhouse,' that Impex intended to derive a benefit from [Powerhouse's] goodwill or reputation." *See id*. On the Verdict Form, the jury was asked to make separate findings as to Impex's profits from the sale of "Powerhouse" brand fitness equipment up to October 6, 2004 (the date Powerhouse filed its lawsuit) and from that date forward. *See id*. The jury answered $17 million and $650,000 respectively. *See id*. The jury was further asked to provide a "reasonable royalty rate for Impex's use of 'Powerhouse' on its fitness equipment" during those two periods. *See id*. According to the Verdict Form, the jury concluded that a 4% royalty rate would be reasonable for the period up to October 6,

3

2004, and that a 6% royalty rate would be reasonable for the period after the lawsuit was filed. *See id.* As to the amount Powerhouse is entitled to recover, the jury answered $719,000.

## Powerhouse's Arguments and Defendants' Response

Relying on 15 U.S.C. § 1117(a), Powerhouse now asks the Court in its motion for judgment to enter a monetary award substantially higher than the jury's award. Specifically, Powerhouse asks the Court to order Impex to pay it a reasonably royalty of $4,637,305 for all of Impex's infringing sales. Powerhouse reaches this figure by applying the 4% and 6% royalty rates supplied by the jury to Impex's total sales– those amounts, according to the testimony of Powerhouse's expert, being $98,791,453.44 prior to the date the lawsuit was filed and $11,427,449.52 for the period thereafter. Powerhouse further asks the Court to treble its lost royalty damages to $13,911,915, arguing that an award of $4,637,305 is inadequate in light of Impex's willful infringement and when measured against Impex's total profits of $17,650,000 from the sale of "Powerhouse" fitness equipment.

Powerhouse also asks the Court to disgorge Impex of the total profits it earned from its infringing sales, contending that such an award is necessary to make Impex's infringement unprofitable and to deter Impex from engaging in future infringement. Powerhouse further argues that the Court should award it Impex's profits because the jury concluded that Impex willfully infringed Powerhouse's trademarks and because, Powerhouse argues, Impex is a "serial infringer."

Powerhouse also seeks the costs it incurred in pursuing this lawsuit against Defendants and prejudgment interest on Impex's profits and/or the award for lost royalty revenue, calculated from the date Powerhouse's claims accrued. Finally, with respect to its motion for judgment, Powerhouse asks the Court to enter a permanent injunction "enjoining all Defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction, from using 'POWERHOUSE' or any mark that is confusingly similar to 'POWERHOUSE' in the fitness industry." *See* Pl.'s Mot. for Judgment ¶ 36. In its separate motion, but also relying on Section 1117(a), Powerhouse seeks an award of attorney fees "on the order of $1.5 million." *See* Pl.'s Mot. for an Award of Attorney Fees ¶ 3.

Defendants respond to Powerhouse's motion for judgment, arguing that the jury's verdict adequately compensates Powerhouse and that Powerhouse simply is attempting to selectively retry those findings of the jury which it dislikes. Defendants argue that an increase in the jury's monetary award only will serve to punish Impex; but, Defendants contend, the purpose of an award under the Lanham Act is to compensate the trademark holder, not to penalize the infringer. Thus Defendants urge the Court to not adjust the jury's verdict.

As to the additional remedies Powerhouse seeks, Defendants argue that only properly taxable costs should be awarded and that prejudgment interest should not be awarded to Powerhouse due to its undue delay in filing this action. Defendants do not

5

object to the entry of a permanent injunction– although they argue that one is unnecessary as Impex ceased its use of the POWERHOUSE mark and does not intend to use the mark again.  Defendants contend, however, that Powerhouse's proposed injunction is overly broad in that it enjoins use of the mark in the "fitness industry" rather than simply for "fitness equipment."

## Applicable Law and Analysis

15 U.S.C. § 1117(a) sets forth the remedies available to a plaintiff prevailing in a trademark infringement action:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction. . . . In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.  The Court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. ¶ 1117(a).  This section "grants a district court a great deal of discretion in

fashioning an appropriate remedy in cases of trademark infringement." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997) (citing *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 917 (Fed. Cir. 1984)). As the plain language of Section 1117(a) indicates, Congress granted district courts the power, based on principles of equity, to increase or decrease a jury's monetary award. *See* 15 U.S.C. § 1117(a).

### Damages and Profits

As Section 1117(a) provides, the court, in its discretion, may enter judgment for any sum above the amount found as actual damages, not exceeding three times that amount. 15 U.S.C. 1117(a). Additionally, if the court finds the amount of recovery based on profits to be inadequate or excessive, it may, in its discretion, increase or decrease the amount of the plaintiff's award. *Id.* "'Profits are awarded under different rationales including unjust enrichment, deterrence, and compensation.'" *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 607(6th Cir. 1991) (quoting *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989)). The Sixth Circuit has advised that "'[t]he trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party.'" *Id.* at 606 (quoting *Ruolo*, 886 F.2d at 941). The statute specifically provides, however, that the sum to be recovered by the plaintiff "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a); *see also Metric & Multistandard Components Corp. v. Metric's Inc.*, 635 F.2d 710 (8th Cir. 1980).

The jury in this case set forth an amount that it believed Powerhouse should be entitled to recover. The jury was not asked to specify whether that amount represented

7

Powerhouse's actual damages, a portion of Impex's profits, or some combination of both remedies. It appears clear to this Court, however, that the $719,000 figure upon which the jury decided represents actual damages to Powerhouse based on lost royalty revenue. Thus the Court concludes that the jury did not award Powerhouse any of Impex's profits, although the Court specifically instructed the jury that it could do so. For the reasons discussed below, the Court believes that the jury's decision to not disgorge Impex of its profits should be left undisturbed. However, because the jury found that Impex intended to derive a benefit from Powerhouse's goodwill or reputation at the time of its initial use of the POWERHOUSE mark and because courts have found that the remedies imposed under Section 1117(a) also are intended to deter future infringing activities, the Court will exercise its discretion and treble the actual damages found by the jury.[2]

---

[2] The Court rejects Powerhouse's offer to find lost royalty revenue in the amount of $4,637,304 based on Impex's sales, as opposed to its profits. There was testimony that royalty rates are not always determined by sales. *See* 5/4/06 Trial Tr. at 141 (Creighton G. Hoffman). Additionally, as the Sixth Circuit has explained with respect to lost royalty revenue, an award is based on a price to which the parties hypothetically would have agreed:

> Under long-standing case law in this circuit, to adopt a reasonable royalty as the measure of damages is to adopt and interpret, as well as may be, the fiction that a license was to be granted at the time of beginning the infringement, and then to determine what the license price should have been. . . . the proper measure is to calculate what the parties would have agreed to as a fair price for [the defendant's use of the plaintiff's trademark].

*Mid-Michigan Computer Sys., Inc. v. Marc Glassman, Inc.*, 416 F.3d 505 (6th Cir. 2005) (internal quotations and citations omitted). As parties are free to negotiate any method

8

In this Court's view, awarding Powerhouse the profits Impex earned on the sale of its "Powerhouse" brand fitness equipment would be grotesquely out of proportion to Powerhouse's circumstances and therefore would create an unjustifiable enrichment or windfall to Powerhouse. Such an award also would impose excessive punishment upon Impex. Several considerations lead the Court to this conclusion.

First, this Court has found, and Powerhouse's representatives acknowledged during the trial, that Powerhouse has never attempted to market home fitness equipment for retail sale and has never licensed any other company to sell such equipment under the POWERHOUSE name. *See* Docket No. 220 at 5; 5/1/06 Trial Tr. at 118 (William Dabish); 5/2/06 Trial Tr. at 133 & 146-47 (Krystal Dabish). Not only does Powerhouse not sell or license fitness equipment, but the Court does not believe that there was any evidence introduced at trial showing or even suggesting that Impex's sale of fitness equipment diverted any sales or business from the products and services that Powerhouse does sell. Second, there was no credible evidence introduced at trial of actual confusion

---

for calculating a reasonable royalty, this Court does not believe that a hypothetical calculation by the court or a jury should be limited to the defendant's sales. Moreover, the Court believes that the Verdict Form– which was adopted largely as proposed by Powerhouse and which Powerhouse approved– likely conveyed to the jury that lost royalty damages should be based on profits as opposed to sales. The Verdict Form instructed the jury to find Impex's profits; immediately below the inquiries regarding Impex's profits, the jury was asked to state a reasonable royalty rate for Impex's use of the "Powerhouse" name. Notably, the jury was not asked to find the total amount of Impex's sales of "Powerhouse" branded fitness equipment. Thus, if the Court concluded that a reasonable royalty rate must be based on Impex's sales, it is uncertain how it now would calculate that amount.

9

or damage to Powerhouse's reputation or goodwill arising from Impex's use of the POWERHOUSE mark. In fact, Powerhouse previously was not able to present evidence of any damage to its reputation due to Impex's infringement and therefore the Court ruled that Powerhouse was not entitled to damages in the form of damage control costs. *See* Docket No. 220 at 5-6. Thus the Court does not believe that disgorgement is necessary to serve either of the two purposes of trademark statutes identified by Congress when it enacted the Lanham Act: first, to compensate the trademark owner (i.e. Powerhouse) for energy, time, and/or money it has spent protecting the reputation of its mark; and second, to "'protect the public so it may be confident that, in purchasing a product bearing a particular trademark which it favorably knows, it will get the product which it asks for and wants to get.'" *Monsanto Chem. Co. v. Perfect Fit Prod. Mfg. Co.*, 349 F.2d 389, 395 (2d Cir. 1965) (quoting S. Rep. No. 1333, 79th Cong., 2d Sess. 102 (1946), in U.S. Code Cong. Serv. 1274 (1946)).

The Court further finds a disgorgement of profits inappropriate because the evidence indicated that Impex's profits were not attributable to its use of the "Powerhouse" name. A number of witnesses, specifically individuals employed by the retail defendants, testified that when their stores stopped selling Impex's fitness equipment under the "Powerhouse" name and began selling the same products under a new name, sales did not fall and, in some cases, they actually increased. *See* 5/8/06 Trial Tr. Morning Session at 28-29 (David Stockmeyer); 5/9/06 Trial Tr. at 11 (Bill Shepardson), 40 & 44 (Hai-I Wong). There also was evidence that consumers purchase

Impex's products based on its quality and price, not because of the "Powerhouse" name. *See* 5/9/06 Trial Tr. at 11 (Bill Shepardson) & 40-44 (Hai-I Wong); 5/8/06 Trial Tr. Afternoon Session at 40 (Annie Chung). The Sixth Circuit specifically has found that equity is not served by an award to the plaintiff of a percentage of the defendant's profits where the evidence indicates that none of the defendant's profits were attributable to its use of the plaintiff's mark. *See Frisch's Rest., Inc. v. Elby's Big Boy of Steubenville, Ohio*, 849 F.2d 1012, 1016 (6th Cir. 1988).

Finally, and perhaps the most important reason why this Court believes that it would be inappropriate to disgorge Impex of its pre-suit profits, is Powerhouse's delay in enforcing its rights. As this Court previously found, Powerhouse was aware of Impex's use of the POWERHOUSE mark at least five years before it filed this lawsuit. In the meantime, defendants expended considerable effort and financial resources selling "Powerhouse" fitness equipment and Impex's profits grew. Powerhouse would reap a windfall if this Court awarded it the profits Impex earned during the period that Powerhouse was sleeping on its rights.

## Costs

Powerhouse is entitled to its costs in bringing this action pursuant to Section 1117(a) and Federal Rule of Civil Procedure 54(d)(1). Defendants recognize this, but they argue that Powerhouse's costs should be limited to those specified in 28 U.S.C. § 1920 and they point out that Powerhouse is not entitled to costs against Wal-Mart based on the Court's April 27, 2006 Stipulated Order. The Court therefore awards costs to

Powerhouse.  The Court agrees with Defendants that those costs should be limited to those specified in Section 1920 and that Powerhouse should not include in its Bill of Costs any costs related to Wal-Mart.

## Prejudgment Interest

Although Section 1117(a) does not provide for prejudgment interest, the Sixth Circuit has held that such an award is within the discretion of the trial court, but "is normally reserved for 'exceptional' cases." *Wynn Oil Co. v. Am. Way Service Corp.*, No. 94-1294, 1995 WL 431019, at *3 (6th Cir. July 20, 1995) (citing *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990)).  "Exceptional cases" are "those cases in which the infringement was 'malicious, willful, fraudulent, or deliberate.'" *Wynn Oil Co. v. Am. Way Service Corp.*, 943 F.2d 595, 607 (6th Cir. 1991) (quoting *Frisch's Rest.*, 849 F.2d at 1017).  While the Court finds this to be an "exceptional" case based on the jury's verdict that Impex intended to derive a benefit from Powerhouse's goodwill or reputation at the time of its initial use of "Powerhouse," the Court concludes that an award of prejudgment interest is inappropriate due to Powerhouse's delay in asserting its trademark rights.

## Permanent Injunction

There is no dispute that Powerhouse is entitled to an injunction, although the Court agrees with Defendants that Powerhouse's proposed injunction is too broad.  The Court therefore will enter an injunction similar to the injunction contained in its April 27, 2006 Stipulated Order.

**Attorney Fees**

Section 1117(a) states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). As stated above, the Court finds that this is an exceptional case based on the jury's verdict and it therefore will award Powerhouse *some* of its attorney fees. But the Court notes that it does not believe that Powerhouse's charge that it was forced to unnecessarily spend time on discovery disputes in any way factors into this Court's conclusion that this is an exceptional case.

The Court, however, has several concerns about Powerhouse's request. Foremost is Powerhouse's indication that it has incurred attorney fees "on the order of $1.5 million." While this figure may be commensurate with other trademark infringement cases, the Court expects that such extraordinary fees could have been avoided and it is not likely to require Impex to pay this amount.[3] During this Court's twenty year career on the federal bench, it has observed a few common themes in the intellectual property law cases that have come before it: the attorneys on both sides frequently fail to cooperate with one another, discovery rarely proceeds smoothly, too many discovery disputes are resolved through motions instead of through direct communication between the attorneys, and (perhaps because of the preceding troubles) costs and attorneys fees reach epic

---

[3]Moreover, the Court does not believe that it would be equitable, under the circumstances of this case, to require Defendants to pay an excessive attorney fees award.

proportions.[4]  The present case is not an exception, as one can glean simply from the tone of and arguments in Powerhouse's motion for attorney fees.

Another related concern is that Powerhouse may seek fees for discovery motions that this Court believes should not have been necessary.  While Powerhouse blames Defendants or Defendants' counsel for discovery problems and delays in this case, Defendants, in return, contend that Powerhouse's attorneys are, at least in part, at fault for this "unnecessary discovery litigation."  Too often, courts are required to resolve discovery disputes that should have been resolved by the parties. While in most cases the Court is able to resolve the dispute at issue, it usually is not necessary for the Court to also spend time deciding which party is at fault in the discovery dispute.  Usually the parties are satisfied that the dispute has been resolved by the Court.  Where a party believes that it has spent considerable time and expense on a discovery dispute which it believes was the sole fault of the other party, the aggrieved party can at that time, seek sanctions.[5]   When the party <u>at that time</u> seeks sanctions, the Court is in a better position to determine whether monetary sanctions are appropriate.  To wait until the end of the

---

[4]The Court acknowledges the unusual complexity of many intellectual property law cases; however, it does not believe that the problems identified arise primarily as a result of such complexity.

[5]Powerhouse, of course, is aware of its right to seek sanctions at the time a discovery dispute is resolved.  On November 22, 2005, Powerhouse sought fees and costs relating to a discovery dispute that was resolved by Magistrate Judge Majzoub on November 11, 2005.  Powerhouse also sought fees and costs on January 17, 2006, relating to a discovery dispute that was resolved by Magistrate Judge Majzoub on January 12, 2006.

case to seek attorney fees for these "discovery disputes" puts the Court in a very difficult position. It requires the Court to conduct a "mini-trial" with respect to each dispute for which the party seeks attorney fees to determine exactly who was at fault and what monetary sanctions should be imposed. Suffice it to say that, at this time, the Court does not intend to entertain any request for attorney fees relating to discovery disputes in this case.

As Powerhouse is awaiting this Court's ruling on its request for an award of attorney fees prior to submitting a detailed itemization of its fees, the Court cautions Powerhouse to take these concerns into account in setting forth its request for attorney fees.

## Conclusion

In summary, the Court finds that principles of equity require an increase in the amount the jury found as actual damages suffered by Powerhouse as a result of defendants' infringement. The Court further concludes that Powerhouse is entitled to the costs and some of the attorney fees it incurred in pursuing this action against defendants, except Wal-Mart. The Court also grants Powerhouse a permanent injunction. The Court, however, will not require Impex to disgorge its profits to Powerhouse and it will not award Powerhouse prejudgment interest on the damage award assessed.

Accordingly,

**IT IS ORDERED**, that Powerhouse's motion for judgment is **GRANTED IN PART AND DENIED IN PART** and a judgment will issue accordingly;

**IT IS FURTHER ORDERED**, that Powerhouse's motion for an award of attorney fees is **GRANTED**.

                                            s/PATRICK J. DUGGAN
                                            UNITED STATES DISTRICT JUDGE

Copies to:
George T. Schooff, Esq.
Edward R. Schwartz, Esq.
Kathleen Lang, Esq.
Howard W. Burdett, Jr., Esq.